## In re MILLER.

### (District Court, E. D. Pennsylvania. June 28, 1909.)

### No. 2,927.

1. BANKRUPTCY (§ 270*)—LIQUOR LICENSE—SALE—TRANSFER—REFUSAL BY STATE COURT.

Where a bankrupt's liquor license was sold subject to transfer, an inquiry by the bankruptcy court to ascertain the grounds on which the state court refused to transfer the license to the purchaser was not a collateral attack on the state court's order.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 270.*]

2. BANKRUPTCY (§ 303*)—SALE OF ASSETS—LIQUOR LICENSE—CONDITIONS—FRAUD—BURDEN OF PROOF.

Where a bankrupt's liquor license was sold subject to transfer, and transfer was refused, the burden of proof that such refusal was brought about by the purchaser's fraud was on those asserting fraud as a defense to the purchaser's right to recover the amount paid.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

3. BANKRUPTCY (§ 266*) — ASSETS — SALE—CONDITIONS—EARNEST MONEY—RETURN.

Where a bankrupt's liquor license was sold by the trustee subject to transfer by the court of quarter sessions, and the court refused a transfer without giving a reason for the refusal, the purchaser was entitled to a refund of the earnest money paid.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 266.*]

In Bankruptcy.

Wessel & Aarons, for trustee.
Monaghan & Phillips, for claimant.

J. B. McPHERSON, District Judge. This case differs in an important particular from In re Comer & Co., 171 Fed. 261, in which a similar application has just been refused. There the conditions of sale were such as to make it necessary to inquire into the reasons that moved the court of quarter sessions to refuse the transfer of the license,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for one of these conditions was that the purchase money would not be refunded if the transfer was refused by reason of the purchaser's personal disability. Of course, such an inquiry is not in any sense a collateral attack upon the order of the court of quarter sessions. It is a mere effort to learn upon what ground the refusal is put; and, if the effort should not be successful, the order must be regarded as based upon some ground that might legally move the discretion of the county court. If the reason for the refusal does not appear, certainly this court cannot assign one ground rather than another for the action of the quarter sessions; it is bound to accept the naked fact of refusal and give it proper effect. But, where it appears clearly and affirmatively that the refusal was put by the quarter sessions upon the ground of the applicant's personal disability, and upon that alone, there seems to be no reason why the actual fact should not be taken into account in its bearing upon the purchaser's claim to have his money refunded.

In the present case the conditions of sale were essentially different from those that governed the decision in Re Comer & Co. Only one condition need be noticed—"Sale subject to the transfer of license by court of quarter sessions." Clearly, under this explicit condition, refusal by the court for any reason within its discretion would entitle the purchaser to a return of his money; and that is the situation now presented. The court first marked the application "withdrawn," but afterwards, upon further consideration, marked it "refused," giving no reason for this final order. As the conditions of sale did not call for any inquiry into the reasons for the refusal, such action of the quarter sessions is conclusive, except perhaps in the single case where it is charged that its refusal was brought about by the purchaser's fraudulent procurement. In that event it may be doubtful whether he could be allowed to take advantage of his own fraud, and to shield himself behind what under all other circumstances would be the conclusiveness of the order. For the purposes of this case, I shall assume that the question of his fraud may be looked into, and I have therefore considered the dispute from that point of view. The referee does not in terms find that the purchaser's conduct was fraudulent; but, if his report is understood to be a substantial finding to that effect, I can only say that I am unable to agree with the conclusion. Fraud is not to be presumed. It must be proved, and the burden is on those who assert it. Bearing these well-known rules in mind, I think it will be found that there is uncertainty enough about the proper inferences to be drawn from the testimony to require the court to decide that the necessary proof has not been forthcoming. Some of the circumstances are, no doubt, suspicious; but most of them are ambiguous in meaning and are capable of supporting either theory of the purchaser's conduct. On the whole, and without discussing the details of the testimony, it seems clear to me that the proper amount and quality of proof are not present, and that the referee's order cannot be sustained.

It is therefore set aside, and the court now directs that the trustee pay to the petitioner, William Lindig, the sum of $1,000 that was deposited as hand money at the sale held on January 11, 1908.